CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 02, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEANDRE JAQUAN GORDON,** )<br>  Plaintiff, )<br> )<br> v. )<br> )<br> **C/O STUMPF, et al.,** )<br>  Defendants. )<br> )<br> ) | Civil Action No. 7:23cv00197<br><br>**MEMORANDUM OPINION**<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

DeAndre Jaquan Gordon, ("Gordon"), a Virginia Department of Corrections, ("VDOC"), inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983, alleging violation of his Eighth and Fourteenth Amendment rights by the defendants. Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge. Thereafter, pursuant to Order entered on November 9, 2023, (Docket Item No. 40), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1). Defendants Sgt. Hill, ("Hill"), Lt. Massingill, ("Massingill"), Warden White, ("White"), Major Christopher King, ("King"), Captain Gilbert, ("Gilbert"), and C.H.A.P. Turner, ("Turner"), through counsel, have filed a Corrections Defendants' Partial Motion to Dismiss, (Docket Item No. 61) ("Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon review of the pleadings, the court will grant the Motion.

# I. Facts

Gordon brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. (Docket Item No. 45 at 1.) ("Amended Complaint"). In the Amended Complaint, which is sworn, Gordon states that he was participating in pod recreation in A-6 Pod at Red Onion on May 7, 2022. (Amended Complaint at 2.) During this recreation activity, Gordon claimed that Officer Stumpf, ("Stumpf"), "sucker[-]punched" him following a disagreement. (Amended Complaint at 2.) Gordon claims to have then engaged in "a struggle" with Stumpf, and Corrections Officer Sexton, ("Sexton"), joined in assaulting plaintiff while he tried to get up from the ground. (Amended Complaint at 2.) Gordon claims he fell to the floor, where more officers assaulted him, while a total of 12 to 15 officers held him down and restrained him. (Amended Complaint at 2-3.)

Gordon claims that he was continually assaulted after being placed in cuffs and leg irons, and Officer John Doe #1, ("Officer No. 1"), got on his neck and said "die, N***** die." (Amended Complaint at 3.) Gordon claims that Officer No. 1 also pushed his finger into his eye socket. (Amended Complaint at 3.) Gordon says that Officer John Doe #2, ("Officer No. 2"), kneed him several times in the face and head. (Amended Complaint at 3.) Gordon claims that he was "eventually" moved from A-6 Pod, and that while exiting the Pod, he was lifted "from both feet from behind" causing him to fall forward and hit his head on concrete by Officer John Doe #3, ("Officer No. 3"). (Amended Complaint at 3.) Gordon then alleges that, "[u]pon going to the ground inside A-4-5-6 vestibule right outside of A-6 Pod," he was again "piled on top of" by numerous corrections officers. (Amended Complaint at 3.) Gordon claims that Hill then ordered his staff to "get me a tooth" and to "knock his teeth out." (Amended Complaint at 3.)

Gordon claims he was moved into the A-4 Segregation Pod where Officers No. 1, 2 and 3 all continued to abuse him by pushing him into a wall. (Amended Complaint at 3.) Gordon further claims that Officer No. 1 pulled his hair. (Amended Complaint at 3.) Gordon claims the assaults continued as he was dragged across the prison yard into the B Building. (Amended Complaint at 4.) Gordon claims Officers No. 1, 2 and 3 ran his face into walls and bent and twisted his arms "beyond their limits" causing his left shoulder to "pop out of the socket." (Amended Complaint at 4.) Gordon alleges defendants Stumpf, Sexton, Rose, Hill and Officers No. 1, 2, 3, 4 and 5 called him racial slurs during the entire incident. (Amended Complaint at 4.)

Gordon claims he was dragged into the B-3 Pod, where he was further assaulted. (Amended Complaint at 4.) Gordon claims that Massingill said, "[I'm] going to bury you," which he took as a threat that he was "going to be killed literally." (Amended Complaint at 4.) Gordon claims that the threat made the other officers more aggressive. (Amended Complaint at 4.) Once in the B-3 Pod, Gordon claims, Massingill ordered Rose and Officers No. 1 and 2 to strip him of his clothes in front of the entire B-3 Pod, while being recorded by a handheld video camera. (Amended Complaint at 4.) Gordon alleges Rose, with help from Officers No. 1 and 2, "dropped" him to his knees. (Amended Complaint at 4.) After his pants were removed, Gordon claims, leg irons were reapplied so tightly, the circulation was cut off in his feet, and his lower legs were cut and bled. (Amended Complaint at 4.) While removing Gordon's shirt, Gordon alleges, Rose tried to choke him by pulling on the shirt around his neck. (Amended Complaint at 4.) Rose, then, handcuffed Gordon so tightly that he claims it cut off the circulation to his hands and caused cuts and bruising to his wrists. (Amended Complaint at 4.) Gordon claims that Rose then pulled a chain attached to his restraints under his legs to purposefully cause

3

immense pressure on his groin area. (Amended Complaint at 5.) Gordon claims that after yelling out in pain, Massingill ordered the officers to stop the assault. (Amended Complaint at 5.)

Gordon claims that he was then denied adequate medical care by Nurse Deel, who arrived on the scene but stood some distance away. (Amended Complaint at 5.) Gordon claims he had two black eyes that were swollen shut, blood clotting in his right eye with a loss of vision and severe pain in his face, head and left shoulder, but Deel never properly assessed any of his injuries. (Amended Complaint at 5.) He also alleges that Deel never checked his restraints to determine if they were too tight. (Amended Complaint at 5.) Gordon said he also informed Deel that his back was cut and needed to be cleaned and bandaged. (Amended Complaint at 5.) Gordon alleges that Gilbert then ordered him to be placed into a suicide watch cell following the alleged beatings. (Amended Complaint at 5.)

Gordon alleges that Gilbert was the highest ranking officer on duty on May 7, 2022, stating:

> Defendant Captain Gilbert stood by and watched as I was assaulted by several staff member[s] of Red Onion State Prison....Defendant Captain Gilbert was the highest ranking officer on duty on May 7th 2022 in which he refused plaintiff medical attention purposely trying not to have my injuries documented. He also allow[ed] for me to stay in five point restraints from 9 [a.m.] pas[t] 11 [p.m.] His shift ended at 6:00 [p.m.]

(Amended Complaint at 5.) Gordon alleges that he filed several requests for medical treatment, filed Written Complaints, Grievances and Grievance Appeals. (Amended Complaint at 5.) Gordon was transferred to Virginia Commonwealth University

4

Medical Center, ("VCU"), on June 8, 2022, because of self-inflicted burn wounds that he says he carried out in fear of his own safety at Red Onion. (Amended Complaint at 5-6.) Specifically, Gordon says that he burned himself to spare his life because he was nearly "killed, tortured, starved" and received death threats. (Amended Complaint at 6.) Gordon says that he was placed in long-term segregation where he "was confined to a cell 24/7" and not "let out to shower or go to any type of recreation." (Amended Complaint at 6.) Gordon alleges his Grievances "were going missing" interfering with his due process rights. (Amended Complaint at 6.) Gordon asserts that Turner is the Chief of Housing and Programming at Red Onion. (Amended Complaint at 6.) Gordon claims that Turner approved for him to be housed in long-term segregation in an "attempt to silence" him. (Amended Complaint at 6.) Gordon alleges he was placed in "punitive segregation" on May 7, 2022, and on May 10, 2022, he was charged with disciplinary offenses for assaulting two correctional officers, threatening bodily harm and refusing to follow an order. (Amended Complaint at 7.) Gordon states that he did not know witnesses' names, but he provided the witnesses' cell numbers, and his request for witnesses was denied. (Amended Complaint at 7.) Gordon alleges his disciplinary hearing was not held until September because he was hospitalized from June 8 to August 8, 2022. (Amended Complaint at 7.) Gordon alleges he was convicted of the disciplinary offenses and had to pay a fine, spent five months in "punitive segregation" and lost his phone privileges for 45 days. (Amended Complaint at 7.) Gordon states that he appealed his conviction to White, asserting that his witness statement request had been tampered with, there was no evidence supporting the charges of aggravated assault upon a nonoffender or threatening bodily harm and that the written disposition did not explain the reasons for the finding of guilt. (Amended Complaint at 8.) White denied his appeal. (Amended Complaint at 8.)

Gordon further alleges that Nurse Practitioner Jessee violated his Eighth Amendment right by refusing to order a CT scan of Gordon's head after observing the severe swelling to his face and head, by failing to clean and dress his open wounds on his legs and wrists and by pressing on the open wound on his back, causing him to flinch from the pain so she could terminate the medical visit, based on disruptive behavior, without treating him. (Amended Complaint at 8-9.) Gordon asserts that he "has exhausted his administrative remedies with respect to all claims and all defendants." (Amended Complaint at 6.)

## II. Analysis

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Stated differently, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

Gordon is proceeding pro se, and, thus, his pleading is entitled to a liberal construction. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In other words, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Jerner,* 404 U.S. 519, 520 (1972)) However, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considering the facts alleged to be true. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The facts alleged must be sufficient for the court to infer that the defendant is liable if those facts are true. *See Ashcroft,* 556 U.S. at 678. The motion should be granted only if the plaintiff is not entitled to judgment on the facts alleged. The motion does not resolve factual disputes between the parties. *See Bell Atl. Corp.*, 550 U.S. at 555. Legal conclusions, labels and conclusory statements are not facts and will not save a claim that is not supported by facts. *See Ashcroft*, 556 U.S. at 678–79.

Section 1983 provides a procedure for vindicating federal rights that have been conferred on individuals. *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000). To state a cause of action under § 1983, plaintiff must allege facts showing that a person, acting under color of state law, violated his rights. As this court has noted, "[l]iability under § 1983 is 'personal, based on each defendant's own

7

constitutional violations.'" *Baltas v. Clarke*, Civil Action No. 7:20cv00276, 2021 WL 1080516, at *14 (W.D. Va. Mar. 18, 2021) (quoting *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)). Accordingly, liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" to violate the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Gordon alleges that White and King violated his Eighth Amendment right to be free from cruel and unusual punishment by maliciously and sadistically "using physical force against the plaintiff without need or provocation, or in failing to intervene to prevent the misuse of force." (Amended Complaint at 6.) However, Gordon does not allege that either White or King was present for the assault or even knew that it was occurring; therefore, Gordon has not adequately pled their personal involvement in the events underlying his claims. Accordingly, I will dismiss Gordon's excessive force claim against White and King without prejudice.

Gordon also alleges that White, King, Gilbert and Hill contributed to and proximately caused his injuries by failing to take "disciplinary or other action to curb the known pattern of physical abuse of inmates by Defendants … Stumpf, …Sexton, C/O T.J. Rose and [Officer No. 1]," constituting deliberate indifference to Gordon's safety in violation of the Eighth Amendment.

Supervisory liability for constitutional violations is not premised on respondeat superior, but on "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries" inflicted on the prisoners in their custody. *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). To state a claim for supervisory liability, a plaintiff must allege facts showing that (1) the individual supervisor had actual or

constructive knowledge that his subordinate was engaging in conduct that posed a "pervasive and unreasonable risk" of constitutional harm to persons like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate that one could infer deliberate indifference to or tacit authorization of the improper conduct; and (3) a causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "Under § 1983, a supervisory official may be held liable only 'where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Riddick v. Kiser*, 2021 WL 4453667, at *11 n.14 (W.D. Va. Sept. 29, 2021) (quoting *Vinnedge*, 550 F.2d at 928).

Gordon pleads no facts to support that White and King were present for the assault or knew or had reason to know about it. Gordon alleges that Hill was present during the altercation, and said, "get me a tooth," and, "knock his teeth out." (Amended Complaint at 3.) Gordon alleges that Gilbert "stood by and watched" as he was assaulted by several staff members. (Amended Complaint at 5.) Gordon further alleges that Gilbert was the highest-ranking officer on duty on May, 2022. (Amended Complaint at 5.) Gordon does not adequately plead that White, King, Hill or Gilbert knew of past subordinate conduct that posed a pervasive and unreasonable risk to inmates, much less that each defendant was deliberately indifferent to or tacitly authorized such conduct. The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a[n] … officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to

9

prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204. While Gordon certainly sufficiently alleges enough facts to support Gilbert and Hill's personal involvement in his assault as bystanders, he does not adequately plead their liability as supervisors. For the foregoing reasons, I will dismiss without prejudice the supervisory liability claim against White, King, Gilbert and Hill.

Gordon alleges that Turner, Massingill and White violated his right to due process of law in violation of the Fourteenth Amendment. Specifically, Gordon alleges that Turner "refus[ed] to allow me access to the witnesses for my institutional hearing by having me housed in long term segregation . . ."; that Massingill provided "an inadequate written disposition of the charges"; and that White "uph[eld] the disciplinary decision." (Amended Complaint at 7.) Gordon alleges that, as a result of the disciplinary decision, he had to pay a fine, spend over five months in punitive segregation and lost his phone privileges for 45 days. (Amended Complaint at 8.)

The Fourteenth Amendment prohibits a state from depriving an individual of life, liberty or property without due process of law. *See* U.S. CONST. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). The first step in any procedural due process claim, then, is to determine whether the plaintiff has been deprived of a protected liberty or property interest. *See Robinson v. Creasey*, Civil Action No. 5:07-cv-00347, 2009 WL 1073642, at *3 (S.D. W.Va. Apr. 21, 2009) (citation omitted). Only if the plaintiff has been deprived of a protected liberty interest does the court get to the second step, determining if the procedures provided the appropriate due process protection. *See Robinson*, 2009 WL 1073642, at *3.

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson*, 545 U.S. at 222. In determining whether a protected liberty interest exists, the court examines the nature of the interest. For prisoners serving a custodial sentence, the interest is "in the nature of a liberty interest" if its deprivation (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) inevitably affects the duration of the inmate's sentence. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Gordon alleges that he was placed in punitive segregation on May 7, 2022, at Red Onion, where he was "confined to a cell 24/7," and "not …let out to shower or go to any type of recreation." (Amended Complaint at 6.) Gordon says that, on May 10, 2022, he was served with disciplinary charges. Gordon alleges that he then self-inflicted burn wounds in an attempt to get out of disciplinary segregation. (Amended Complaint at 5-6.) Gordon states that he was hospitalized from June 8 to August 8, 2022. (Amended Complaint at 7.) Gordon states that, after he was discharged from VCU, he was housed at Sussex II State Prison, where his disciplinary hearing took place. (Amended Complaint at 7.) Gordon states that, after being found guilty of the disciplinary infraction, "I had to pay a fine, I spent over [five] months in punitive segregation and los[t] my phone privileges for 45 days." (Amended Complaint at 8.)

When a penalty for a disciplinary infraction does not affect the length of the inmate's sentence, his constitutionally protected liberty interests are limited to freedom from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484. This court has

recognized that "[c]onfinement in segregation by itself does not trigger due process protections." *Barbee v. Anderson*, 2020 WL 1189938, at *5 (W.D. Va. Mar. 12, 2020). "It is well established that a temporary assignment to segregated confinement – even six months or more, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures – is *not* atypical or significant hardship." *Barbee,* 2020 WL 1189938, at *5. *See also Sandin*, 515 U.S. at 485-86 (finding that 30 days in segregation did not trigger protected liberty interest); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (finding six months under conditions dictated by administrative segregation policies was not atypical under *Sandin*).

Gordon has alleged only that Turner housed him in long-term segregation before such placement was approved by the Central Classification Service. (Amended Complaint at 6-7.) To the extent that Gordon may be alleging that this placement was in violation of VDOC policy, Gordon fails to allege that this placement was in violation of his Constitutional rights. Gordon pleads no facts to indicate that Turner was the official responsible for anything other than his initial placement in segregation. As stated above, placement in segregation does not, by itself, trigger due process protections. Additionally, the conditions of segregation at Sussex II do not state a claim against Turner, a Red Onion official.

Gordon's allegation that Turner, Massingill and White violated his due process protections by improperly conducting his disciplinary proceedings fails to state a claim for relief under § 1983. "[P]risoners are only afforded procedural due process protections, such as written advance notice of charges and the right to call witnesses, when the loss of statutory good time credits or some other liberty interest is at issue." *Hines v. Ray*, 2005 WL 2333468, at *3 (W.D. Va. Sept. 22, 2005) (citing

*Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Gordon has not alleged any penalties arising out of his disciplinary offense other than those mentioned above. Regarding White's decision to uphold the disciplinary finding on appeal, "due process does not require the opportunity to appeal prison disciplinary decisions." *Crawley v. Kanode*, Civil Action No. 7:19cv00474, 2022 WL 963978, at *13 (W.D. Va. Mar. 30, 2022) (citing *Wolff*, 418 U.S. at 563-70).

This court has held that the loss of telephone privileges is not an atypical and significant hardship that implicates due process protections. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (noting that prisoners have no liberty interest in privileges, such as telephone or canteen access); *United States v. Alkire*, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) ("there is no Constitutional or federal statutory right to use of a telephone while in prison"); *White v. Mullins*, 2009 WL 2315509, at *1-*3 (W.D. Va. July 27, 2009) (dismissing as frivolous inmate's § 1983 claim pursuant to 28 U.S.C. 1915A(b)(1) when the inmate's only alleged due process violation was the loss of telephone privileges while in segregated housing).

Here, Gordon does not adequately plead that the alleged fine deprived him of a liberty interest, because without knowing the value of the fine, the court is unable to determine if it constituted an atypical or significant hardship. "While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small monetary fines assessed at disciplinary hearings do not trigger due process protections." *Riddick v. Kegley*, 2023 WL 2326858, at *5 (W.D. Va. Mar. 2, 2023). *See, e.g. Allen v. Fields*, No. 7:21cv00207, 2022 WL 4485181, at *4 (W.D. Va. Sept. 27, 2022) (dismissing due process claim where penalty was a

13

$15 fine) *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Bratcher v. Mathena*, No. 7:15cv00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship). Accordingly, Gordon has alleged no "more than a sheer possibility that a defendant has acted unlawfully" in penalizing him with an unspecified fine. *Iqbal*, 556 U.S. at 678.

For the reasons stated above, Turner, White and Massingill's Motion to dismiss Gordon's due process claim for failure to state a claim under § 1983 will be granted, and this claim will be dismissed without prejudice.

## I. Conclusion

For the reasons stated, the court will grant the defendants' Partial Motion to Dismiss in its entirety. (Docket Item No. 61.) An appropriate order will be entered this day.

**ENTERED:** August 2, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE