CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 20, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **DEANDRE JAQUAN GORDON,** ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **C/O STUMPF, et al.,** ) <br>    Defendants. ) <br> ) <br> ) | Case No. 7:23cv00197 <br><br> **MEMORANDUM OPINION** <br><br> By: Pamela Meade Sargent <br> United States Magistrate Judge |

The pro se plaintiff, DeAndre Jaquan Gordon, ("Gordon"), is a Virginia Department of Corrections, ("VDOC"), inmate housed at Red Onion State Prison, ("Red Onion"), during the time relevant to his claims. Gordon sues the defendants under 42 U.S.C. § 1983, alleging that they either denied him medical care, used excessive force, encouraged use of force or failed to prevent inappropriate use of force. Plaintiff alleges that the defendants' actions violated his Eighth and Fourteenth Amendment constitutional rights. Pursuant to 28 U.S.C. § 636(c) and the consent of the parties, this matter was transferred to the undersigned. Defendants Sgt. Hill, ("Hill"), Corrections Officer Sexton, ("Sexton"), Corrections Officer Stumpf, ("Stumpf"), and Corrections Officer T.J. Rose, ("Rose"), filed a motion for summary judgment, arguing that Gordon failed to exhaust his administrative remedies with regard to any of the claims against them. (Docket Item No. 42.) This motion subsequently was dismissed without prejudice, as Gordon filed an amended complaint. (Docket Item No. 45) ("Amended Complaint"). Thereafter, the same defendants, as well as Captain Gilbert, ("Gilbert"), and Lt. Massingill, ("Massingill"), filed another motion for summary judgment, again arguing that Gordon failed to exhaust his administrative remedies.

1

(Docket Item No. 71) ("Motion"). Despite notice that he must respond to the Motion within 21 days, (Docket Item No. 73), and an order extending the deadline, (Docket Item No. 77), Gordon has filed no response to the Motion. Based on the arguments and representations contained in the pleadings, and for the reasons set out below, the Motion will be **GRANTED**.

I.

Gordon brings this civil rights action pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. (Amended Complaint at 1.) In the Amended Complaint, which is sworn, Gordon states that he was participating in pod recreation in the A-6 Pod at Red Onion on May 7, 2022. During this recreation activity, Gordon claimed that Stumpf "sucker[-]punched" him following a disagreement. (Amended Complaint at 2.) Gordon claims that Sexton then began to assault him as well. Gordon claims he fell to the floor, where more officers assaulted him, while a total of 12 to 15 officers held him down and restrained him. (Amended Complaint at 2-3.)

Gordon claims that he was continually assaulted after being placed in cuffs and leg irons, and Officer John Doe #1, ("Officer No. 1"), got on his neck and said "[d]ie, N****r die." (Amended Complaint at 3.) He claims that Officer No. 1 also pushed his finger into his eye socket. (Amended Complaint at 3.) Gordon says that Officer John Doe #2, ("Officer No. 2"), kneed him several times in the face and head. (Amended Complaint at 3.) Gordon claims that he was "eventually" moved from the A-6 Pod, and that while exiting the Pod, he was lifted "from both feet from behind" causing him to fall forward and hit his head on concrete by Officer John Doe #3, ("Officer No. 3"). (Amended Complaint at 3.) Gordon then alleges that, "[u]pon going to the ground inside A-4-5-6 vestibule right outside of A-6

Pod," he was again "piled on top of" by numerous corrections officers. (Amended Complaint at 3.) Gordon claims that Hill then ordered his staff to "[g]et me a tooth" and to "[k]nock his teeth out." (Amended Complaint at 3.)

Gordon claims he was moved into the A-4 Segregation Pod where Officers No. 1, 2 and 3 all continued to abuse him by pushing him into a wall. (Amended Complaint at 3.) Gordon further claims that Officer No. 1 pulled his hair. (Amended Complaint at 3.) Gordon claims the assaults continued as he was dragged across the prison yard into the B Building. (Amended Complaint at 4.) Gordon claims Officers No. 1, 2 and 3 ran his face into walls and bent and twisted his arms "beyond their limits," causing his left shoulder to "pop [out] of the socket." (Amended Complaint at 4.) Gordon alleges defendants Stumpf, Sexton, Rose, Hill and Officers No. 1, 2, 3, 4 and 5 called him racial slurs during the entire incident. (Amended Complaint at 4.)

Gordon claims he was dragged into the B-3 Pod, where he was further assaulted. (Amended Complaint at 4.) Gordon claims that Massingill said, "[I'm] going to bury you," which he took as a threat that he was "going to be killed literally." (Amended Complaint at 4.) Gordon claims that the threat made the other officers more aggressive. (Amended Complaint at 4.) Once in the B-3 Pod, Gordon Claims, Massingill ordered Rose and Officers No. 1 and 2 to strip him of his clothes in front of the entire B-3 Pod, while being recorded by a handheld video camera. (Amended Complaint at 4.) Gordon alleges Rose, with help from Officers No. 1 and 2, "dropped" him to his knees. (Amended Complaint at 4.) After his pants were removed, Gordon claims, leg irons were reapplied so tightly, the circulation was cut off in his feet, and his lower legs were cut and bled. (Amended Complaint at 4.) While removing Gordon's shirt, Gordon alleges, Rose tried to

3

choke him by pulling on the shirt around his neck. (Amended Complaint at 4.) Rose, then, handcuffed Gordon so tightly that he claims it cut off the circulation to his hands and caused cuts and bruising to his wrists. (Amended Complaint at 4.) Gordon claims that Rose then pulled a chain attached to his restraints under his legs to purposefully cause immense pressure on his groin area. (Amended Complaint at 5.) Gordon claims that after yelling out in pain, Massingill ordered the officers to stop the assault. (Amended Complaint at 5.)

Gordon claims that he was then denied adequate medical care by defendant Nurse Deel, ("Deel"), who arrived on the scene but stood some distance away. (Amended Complaint at 5.) Gordon claims he had two black eyes that were swollen shut, blood clotting in his right eye with a loss of vision and severe pain in his face, head and left shoulder, but Deel never properly assessed any of his injuries. (Amended Complaint at 5.) He also alleges that Deel never checked his restraints to determine if they were too tight. (Amended Complaint at 5.) Gordon said he also informed Deel that his back was cut and needed to be cleaned and bandaged. (Amended Complaint at 5.) Gordon alleges that Gilbert then ordered him to be placed into a suicide watch cell following the alleged beatings. (Amended Complaint at 5.)

Gordon alleges that Gilbert was the highest-ranking officer on duty on May 7, 2022, stating:

> Defendant Captain Gilbert stood by and watched as I was assaulted by several staff member[s] of Red Onion State Prison. . . . Defendant Captain Gilbert was the highest ranking officer on duty on May 7th[,] 2022[,] in which he refused plaintiff medical attention purposely trying not to have my injuries documented. He also allow[ed] for me

4

> to stay in five point restraints from 9 [a.m.] pas[t] 11 [p.m.] His shift ended at 6:00 [p.m.]

(Amended Complaint at 5.) Gordon was transferred to Virginia Commonwealth University Medical Center, ("VCU"), on June 8, 2022, because of self-inflicted burn wounds that he claims to have carried out in fear of his own safety at Red Onion. (Amended Complaint at 5-6.) Specifically, Gordon says that he burned himself to spare his life because he was nearly "killed, tortured, starved" and received death threats. (Amended Complaint at 6.) Gordon says that he was placed in long-term segregation where he was "confined to a cell 24/7" and "not … let out to shower or go to any type of recreation." (Amended Complaint at 6.) Gordon alleges his Grievances "were going missing," interfering with his due process rights. (Amended Complaint at 6.) Gordon asserts C.H.A.P. Turner, ("Turner"), is the Chief of Housing and Programming at Red Onion. (Amended Complaint at 6.) Gordon claims that Turner approved for him to be housed in long-term segregation in an "attempt to silence [him.]" (Amended Complaint at 6.) Gordon alleges he was placed in "punitive segregation" on May 7, 2022, and on May 10, 2022, he was charged with disciplinary offenses for assaulting two correctional officers, threatening bodily harm and refusing to follow an order. (Amended Complaint at 7.) Gordon states that he did not know witnesses' names, but he provided the witnesses' cell numbers, and his request for witnesses was denied. (Amended Complaint at 7.) Gordon alleges his disciplinary hearing was not held until September because he was hospitalized from June 8 to August 8, 2022. (Amended Complaint at 7.) Gordon alleges he was convicted of the disciplinary offenses and had to pay a fine, spent five months in "punitive segregation" and lost his phone privileges for 45 days. (Amended Complaint at 8.) Gordon states that he appealed his conviction to Warden White, ("White"), asserting that his witness statement

5

request had been tampered with, there was no evidence supporting the charges of aggravated assault upon a nonoffender or threatening bodily harm and that the written disposition did not explain the reasons for the finding of guilt. (Amended Complaint at 8.) White denied his appeal. (Amended Complaint at 8.)

Gordon further alleges that defendant Nurse Practitioner Jessee violated his Eighth Amendment right by refusing to order a CT scan of Gordon's head after observing the severe swelling to his face and head, by failing to clean and dress his open wounds on his legs, wrists and back and by pressing on the open wound on his back, causing him to flinch from the pain so she could terminate the medical visit, based on disruptive behavior, without treating him. (Amended Complaint at 8-9.)

In support of their Motion, defendants Hill, Sexton, Stumpf, Rose, Gilbert and Massingill have filed an affidavit from T. Still, who is the Institutional Grievance Coordinator at Red Onion. (Docket Item No. 72-1, ("Still Affidavit"), at 1.) In his Affidavit, Still states that Gordon filed a Written Complaint regarding the May 7, 2022, incident. (Still Affidavit at 4). Still states that Gordon also filed a Regular Grievance, but the Grievance was not filed properly, so it was rejected at intake and returned to Gordon. (Still Affidavit at 4.) The Affidavit states that:

> . . . Records reflect that Gordon submitted a written complaint dated May 9, 2022, and logged as ROSP-22-INF-00861. In the written complaint Gordon wrote that various Red Onion staff members physically attacked him on May 7, 2022. The written complaint was received on May 11, 2022, and responded to on May 26, 2022. The responding staff member wrote, in part, that Gordon had assaulted a staff member during pod recreation, that Gordon had been assessed by medical, and that Gordon was placed in RHU. . . .

6

> . . . Records also reflect that Gordon submitted multiple regular grievances that he dated June 3, 2022, one of which referenced incident date May 7, 2022. In the regular grievance, Gordon wrote that multiple staff members had assaulted him and used unnecessary force on May 7, 2022. The regular grievance was received in the grievance department on June 7, 2022, and was rejected during the intake process that same day, with the notation "must attach written [c]omplaint or receipt." Therefore, the regular grievance was not logged into VACORIS, and no log number was provided, and the grievance was returned to Gordon. A copy of the regular grievance is attached as Enclosure C. Gordon's grievance file does not reflect that he submitted this regular grievance for appeal of the intake decision or resubmitted the regular grievance with the required documentation.

(Still Affidavit at 4.) The Affidavit concludes that "Gordon has not filed a regular grievance that was accepted during the intake process and processed through all applicable levels, concerning his claim… that he was assaulted by several ROSP officers on May 7, 2022." (Still Affidavit at 4-5.) It further concludes that, "this issue was not exhausted through the administrative grievance process." (Still Affidavit at 5.)

According to Still, The VDOC grievance procedure is governed by Operating Procedure 866.1, ("OP 866.1"). (Still Affidavit at 2; Docket Item No. 72-1 at 6-22.) OP 866.1 details the grievance process within the VDOC and how prisoners are instructed to use it. It allows for inmates to resolve problems at a low level, and it allows administrators a chance to correct problems in a timely manner. (Still Affidavit at 2.) Under OP 866.1, the first step in the informal complaint process is a verbal complaint. (Still Affidavit at 2.) If the issue remains unresolved or if the inmate is unsatisfied with the resolution after the Verbal Complaint, the second step in the informal process is a Written Complaint. (Still Affidavit at 2-

7

3.).\ The Written Complaint should be responded to by the appropriate staff member. (Still Affidavit at 2.) If there is no response within 15 days of receipt, or the inmate is dissatisfied with the response to the Written Complaint, the inmate may file a Regular Grievance. (Still Affidavit at 2.) OP 866.1 states that, "Following receipt of a Regular Grievance, the Institutional Ombudsman has two working days to accept or reject the grievance." (Docket Item No. 72-1 at 9.) After the Grievance is accepted, and a response is received, an inmate has five days to file an appeal if he is unhappy with the result. (Docket Item No. 72-1 at 10.) If appealed, staff has 20 days to respond. (Docket Item No. 72-1 at 10.) If the appeal is not satisfactory to the inmate, and all the steps in OP 866.1 are exhausted, only then may the inmate seek judicial relief. (Docket Item No. 72-1 at 10.)

Gordon filed a Written Complaint, dated May 9, 2022. (Docket Item No. 72-1 at 23.) The Written Complaint detailed the abuse that he allegedly suffered on May 7. Staff responded to the Written Complaint on May 26, 2022, stating, in part, that Gordon had "assaulted a staff member during Pod Rec." (Docket Item No. 72-1 at 23.) Gordon then filed a Regular Grievance, dated June 3, 2022, generally detailing the same alleged events and asking for relief in the form of the officers being terminated, the grant of a protective order and being transferred out of Red Onion. (Docket Item No. 72-1 at 24.) The Regular Grievance was rejected at intake and returned to Gordon for insufficient information. (Docket Item No. 72-1 at 25.) Specifically, Gordon did not attach the Written Complaint or its receipt to the Regular Grievance, as required. (Docket Item No. 72-1 at 25.)

As stated above, Gordon has filed no response to the Motion.

8

*II.*

In their Motion, defendants Gilbert, Hill, Massingill, Sexton, Stumpf and Rose argue that summary judgment should be entered in their favor on Gordon's claims against them because there is no genuine dispute of fact, and he failed to exhaust his administrative remedies as to those claims. With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

9

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C. § 1997e(a). It provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, including following time limits, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90.

Based on a review of the evidence submitted, I find there is no genuine dispute of material fact that Gordon did not fully exhaust his administrative remedies on his claims against defendants Hill, Sexton, Stumpf, Rose, Gilbert and Massingill.

The undisputed facts before the court show that Gordon's Regular Grievance was rejected at intake due to his failure to attach the necessary documentation, which, in this case, was a copy of his Written Complaint. (Docket Item No. 72-1 at 25.) Gordon has provided no evidence showing that he remedied this deficiency in a timely manner. Additionally, there is no evidence that Gordon appealed the intake decision or refiled a Regular Grievance that was accepted at intake. For exhaustion to be proper, it must comply with an agency's deadlines and procedural rules. *See Woodford*, 548 U.S. at 90. In not complying with the VDOC's procedural rules and requirements, Gordon's actions do not constitute exhaustion based on the standard articulated in *Woodford*. *See* 548 U.S. at 90. There are no exceptions to the PLRA's exhaustion requirement. *See Ross v. Blake*, 578 U.S. 632, 639 (2016).

The undisputed evidence before the court demonstrates that Gordon initiated the grievance process on the claims raised in this case when he filed his May 2022 Written Complaint. Following his Written Complaint, Gordon subsequently submitted a Regular Grievance, raising the same issues alleged in the Written Complaint, which promptly was rejected at intake. The response from the Grievance Coordinator indicated that the Grievance was rejected because Gordon did not properly comply with the VDOC's procedural rules.

The principal purpose of the PLRA was to chill the immense amount of prisoner-initiated litigation in federal court. *See Woodford*, 548 U.S. at 84. If a prisoner wants to bring suit in federal court, he must have properly utilized the available remedies "in accordance with the applicable procedural rules," so prisons have an opportunity to address claims administratively. *See Woodford*, 548 U.S. at 84. While an inmate's inability to avail himself of the administrative grievance

11

procedures would render those grievance procedures effectively unavailable, there is no evidence to suggest that Gordon was not able to avail himself of the administrative remedies at Red Onion. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Nor was there evidence to suggest that the prison officials prevented him from using it, which would render a "process that exists on papers [] unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). A failure to use available remedies properly, thus rendering those remedies no longer available to the prisoner in the future, does not constitute exhaustion. *See Woodford*, 548 U.S. at 93. To allow Gordon to proceed with his claims in federal court would be to significantly undermine the purpose of § 1997e(a) of the PLRA.

Summary judgment is appropriate because the exhaustion requirement was not met, and Gordon offered no evidence to demonstrate either that it was met, or that there were any attempts to prevent him from availing himself of the grievance procedures.

### III.

Based on the above-stated reasons, the motion for summary judgment (Docket Item No. 71), will be **GRANTED**, and Gordon's claims against defendants Hill, Sexton, Stumpf, Rose, Gilbert and Massingill will be dismissed. An appropriate order will be entered.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record and unrepresented parties.

ENTERED: September 20, 2024

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE